## DEICHMANN v. GERARD et al. *
### No. 14398.

Court of Appeal of Louisiana. Orleans.
Dec. 19, 1932.

---

*Rehearing denied January 16, 1933. Certiorari denied by Supreme Court February 27, 1933.

Neil A. Armstrong, Jr., J. G. Pendergrast, and A. M. Suthon, all of New Orleans, for appellant.

Eraste Vidrine, of New Orleans, for appellees.

JANVIER, J.

The personal injuries for which plaintiff seeks monetary remuneration were sustained in an automobile accident which occurred after dark on the Jefferson Highway, about 15 miles or so southeast of Baton Rouge. The automobile in which Dr. Deichmann was riding belonged to Gerard, one of the defendants, and was being operated at the time by Forio, the other defendant. Deichmann was seated on the rear seat and was dozing just prior to the accident. The three occupants were on their way to Baton Rouge from New Orleans, having left the latter city some two and a half or three hours earlier.

At the point at which the accident took place, which is between 1,000 and 1,500 feet southeast of Hope Villa and of the highway crossing over a small stream, the presently used concrete highway and the then used graveled roadway converged, and persons going toward Baton Rouge were at that time required to leave the concrete and turn slightly to the left on the graveled road. The concrete highway, which is now in use and which makes a gradual turn to the right, was at that time completed for a few hundred yards beyond that point, but had not been thrown open to the public because the bridge over the small stream, to which we have referred, had not then been erected.

Forio, driving on the concrete roadway, unfamiliar with the road and not knowing that he should follow the road to his left and leave the concrete, instead of doing so, continued on the concrete, and, just as he began to turn to the right, in following the concrete he suddenly found himself confronted with a large signboard standing on the highway itself and directly in the path of the automobile. He applied the brakes and attempted to turn the car, but lost control of it when it skidded. It struck a post located in the angle made by the converging roadways, and the injuries of which Dr. Deichmann complains were sustained.

The driver, Forio, is charged with negligence in attempting, while traveling at too high a rate of speed, to swerve the car to the left in an effort to turn to the graveled highway. It is sought to hold Gerard, the other defendant, on the allegation that Forio, in driving the car, was acting as his agent.

In the district court a jury rendered a unanimous verdict for defendants, and from a judgment based thereon plaintiff has appealed.

Defendants contend that they and plaintiff were engaged in a joint enterprise and that, if there was negligence on the part of any one of them, that negligence should be imputed to all and should bar recovery by any one of them. But they also maintain that there was no negligence whatever and that the unfortunate affair resulted from the fact that no proper warning sign called Forio's attention to the fact that he should turn aside from the concrete and that, when confronted with a sudden emergency, as Forio was, he did what seemed to him best and applied the brakes.

■ Plaintiff maintains that there was a warning signboard which the automobile had passed some 500 feet before reaching the point of the accident and that Forio should have seen this sign. The evidence overwhelmingly proves that the sign to which plaintiff refers was not erected until after the accident in question and that it was put up then because of the complaint made by the very persons concerned in this case, who, on the day after the accident, called upon an official of the state highway commission and directed his attention to the grave danger of the situation. This official testified that the complaint had been made and that as a result he had caused the said sign to be erected. Since the said complaint was not made until the next day and since it is evident that to give an order for the sign and to comply with such an order would require a few hours at least, it seems unlikely that this sign was already in place when, on the return trip the day after the accident, plaintiff says he saw it. Then, too, if, on the return trip, he had seen it, he would in all probability have

called it to the attention of his companions, which he admits he did not do. We say he probably would have called it to the attention of his companions because he said that when his companions called on the highway official to whom we have referred and complained that there was no sign at that point, he was with them, and, therefore, knew that they contended that there was no sign there. If, then, on the return trip, he saw a sign, it is hardly possible that he would have failed to call it to the attention of his companions.

We are convinced, then, that there was no sign to call to Forio's attention the fact that he must turn aside from the concrete highway, which was ahead of him, and enter a comparatively inconspicuous graveled road.

Not only was the graveled road narrower and less inviting than the concrete highway, but it was rendered even more inconspicuous by the fact that the side of the concrete road from which the graveled road entered was banked to a height a foot or two above the level of the graveled road and this bank or elevation, no doubt, served to throw a shadow upon the end of the smaller and lower road.

The concrete highway which Forio continued to follow had been built by an efficient highway department and with the object of making the roadway as modern and as straight and as passable at reasonably high speeds as is possible and, in the absence of signs or warnings, it is not surprising that a person unfamiliar with the fact that he must turn aside would continue along this more inviting highway.

The other sign which suddenly loomed up in front was not a warning sign and was not located on the straight road. If it had been so located, of course, Forio should have seen it before reaching a point so close to it that he could not stop; but his headlights were focused straight ahead, as is usual and proper and, until he turned the car slightly to the right to follow the line of the concrete, the sign was some distance over to his right and was in darkness. Necessarily he did not see it until his lights flared upon it. It was then too close to permit of his stopping the car and, in suddenly realizing that he must turn to the other roadway and in acting as he did in the emergency, he cannot be charged with actionable negligence.

It is conceded that prior to reaching the slight turn in the highway the speed of the car had been approximately 35 to 40 miles an hour and that this had been reduced to approximately 20 or 25 at the time the sign loomed up ahead. It is contended that even this speed was violative of the state statute on the subject (Act No. 296 of 1928, title 2, § 5), in which it is provided that:

"It shall be prima facie lawful for the driver of a vehicle to drive at * * * fifteen miles an hour in traversing or going around curves or traversing a grade upon a highway when the driver's view is obstructed within a distance of one hundred feet along such highway in the direction in which he is proceeding."

We do not believe that it can be said that a speed of 20 to 25 miles an hour when approaching, at night, a very slight curve on a modern highway, is excessive, and we feel that to hold that the statute applies in such situation would unduly interfere with reasonable speeds while driving at night in this locality.

Furthermore, we notice that the statute does not make it unlawful to drive at a speed in excess of 15 miles an hour, but, on the contrary, merely states that it shall be prima facie lawful to drive at 15 miles an hour. This may place upon a person exceeding 15 miles the burden of showing the circumstances which justify the additional speed, and if it does, we think that to show that the curve is a very slight one and that it is in the open country, where there is very little traffic and where there is no congestion, is sufficient. The doctrine applicable is stated in Jacobs v. Jacobs, 141 La. 272, 74 So. 992, 997, L. R. A. 1917F, 253, in which the court said:

"The rule is well established in the jurisprudence of this state that a person using a public highway, especially in an incorporated city, has a right to presume and to act upon the presumption, that the way is safe for ordinary travel, even at night, and he is not required to be on the lookout for extraordinary dangers or obstructions to which his attention has not been called."

While it is true that the accident which we now are investigating did not occur in an incorporated city, the reasoning of the Jacobs Case applies, and a person using a modern concrete highway in the open country and driving at so reasonable a speed as 20 or 25 miles an hour is justified in assuming and in acting on the assumption that the way is safe for ordinary travel, even at night.

The skidding of the car does not of itself conclusively show negligence. Barrett et al. v. Caddo Transfer & Warehouse Co., Inc., 165 La. 1075, 116 So. 563, 58 A. L. R. 261; Siren et al. v. Montague (La. App.) 142 So. 196; Monroe v. D'Aunoy (La. App.) 143 So. 716.

Since the speed of 20 to 25 miles per hour was, as we have said, reasonable under the circumstances, and since in the emergency Forio did what seemed best to him and what might have seemed best to any other reasonably prudent and ordinarily skillful driver, the mere fact that a skid resulted is not proof of negligence.

Whether the large sign which suddenly loomed up on the highway was in the middle of the road, or was slightly to one side, is of no importance. The important point was

that it was in darkness and could not be seen sooner.

The jury was of the opinion that there was no negligence and so are we.

The judgment appealed from is affirmed.

Affirmed.